In the Matter of Michael
CIARLEGLIA, Debtor.

CHARLIE HARRIS
PONTIAC, Plaintiff,

v.

Michael CIARLEGLIA, Defendant.

Bankruptcy No. 82–1075.
Adv. No. 82–612.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 9, 1985.

Francis H. Cobb, Tampa, Fla., for plaintiff.

Guillermo A. Ruiz, St. Petersburg, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is a complaint, filed by Charlie Harris Pontiac (Harris) which seeks an order from this Court declaring a debt owed by Michael Ciarleglia (Debtor) to Harris to be non-dischargeable. Alternatively, Harris seeks to have this Court deny the Debtor a discharge pursuant to § 727 of the Bankruptcy Code. The claim of non-dischargeability is based on the contention that the Debtor obtained properties under a false pretense, misrepresentation or actual fraud. Specifically, Harris alleges that a credit application submitted by the Debtor, on which Harris relied in extending a line of credit to the Debtor, was materially false in that the Debtor failed to list certain debts owed by the Debtor to trade creditors. In addition, Harris contends that the Debtor promised, in writing, to pay for all purchases by the 10th day of the month following the purchase and that the Debtor never intended to abide by that promise.

Harris also claims that the credit application submitted by the Debtor was, in fact, a statement in writing concerning the Debtor's financial condition. Therefore, the debt owed to Harris should be declared to be non-dischargeable pursuant to § 523(a)(2)(B).

In addition, Harris seeks to bar the Debtor's general discharge based on § 727(a)(3) and (a)(4). Harris claims that the Debtor failed to keep adequate books and records from which his financial condition could be ascertained and that he made a willful knowing, false statement under oath on his schedules when he scheduled an obligation as secured when, in fact, the obligation was unsecured.

The facts as revealed at the final evidentiary hearing and relevant to a resolution of the issues under consideration are as follows:

At all times relevant, the Debtor was the owner and operator of an automobile repair and body shop under the trade name "Michael's Auto Salon" (Michael's). Prior to opening this business, the Debtor was employed by various automobile dealership service departments including, at one time, by Harris. It appears that the Debtor believed that he was due substantial unpaid wages from Harris, however, that matter is not under consideration at this time. However, Harris contends that the Debtor's contention that he was owed money by Harris, served as a motive for the Debtor's alleged fraudulent activity.

The Debtor opened Michael's in the summer of 1981. During the initial months of operation, the Debtor maintained a regular relationship with the Plaintiff purchasing automobile parts on a cash basis. In January, 1982 the Debtor purchased an already operating auto body and repair shop. In connection with the opening of this second location, the Debtor decided that it would be advantageous to acquire a line of credit with Harris for the inventory needs. The Debtor approached Harris regarding a line of credit and was instructed to submit an application on a form furnished by Harris. The Application requested that the Debtor furnish credit references with indications of whether the account was open or closed. There were spaces for the Debtor to list five references, however, the Debtor listed only four and indicated that all four were open accounts. The application also included a statement in bold print to the effect that the Debtor agreed to pay for all purchases on or before the 10th day of the month following the purchase.

It appears that upon receiving the application from the Debtor, Harris checked the credit references and that all were correct and accurate. The Plaintiff, after having verified the information furnished by the Debtor and after having checked with the parts manager, granted the application.

Subsequently, the Debtor purchased $18,012.66 worth of parts on the following

dates: January, 1982—$1,404.48; February, 1982—$6,670.04; March, 1982—$3,219.63; April, 1982—$5,874.42; and May, 1982—$1,347.30. It is without dispute that none of these purchases have ever been paid for by the Debtor.

It appears that the Debtor employed the services of an outside accounting firm after in-house personnel appeared unable to handle the records. The accounting firm prepared monthly profit and loss statements and the Debtor himself allegedly kept daily sales receipts. For some time, the Debtor paid his employees in cash, however, it appears that this was later changed so that the employee's were paid by check. The Debtor kept the check book, together with the check stubs himself as a record of his payroll. None of these records, save for a few monthly profit and loss statements, are available now because they were allegedly stolen by a Mr. Christiansen, a prospective purchaser of Michael's.

On the schedules submitted by the Debtor, the Debtor listed Mike Carnevalle as a secured creditor. The obligation to Mr. Carnevalle was allegedly secured by a lien on the Debtor's automobile, a 1955 Chevrolet. The car was a hobby of the Debtor and it appears that he performed substantial restoration work on the car, not only body work, but also replacing the engine with a high powered engine with funds advanced by Carnevalle. It is without dispute that a check of the records with the State of Florida fails to disclose any recorded lien on the title of this particular vehicle.

Based on the foregoing facts, it is the contention of Harris that the Debtor should be denied a discharge in general, or alternatively, the debt owed by the Debtor to Harris should be declared to be non-dischargeable.

Considering first the claim that this Debtor is not entitled to the general protective provisions of a bankruptcy discharge, this Court is satisfied that the proof presented in support of the claim based on § 727(a)(3) (failure to keep books and records) and § 727(a)(4) (false oath in bankruptcy) falls woefully short of the degree required to show that the Debtor is not entitled to a general discharge.

It is well established and it needs no elaborate citation of authorities to substantiate the premise that the provisions of the Code dealing with the debtor's right to a discharge are remedial in nature and that a claim that the Debtor is not entitled to a general discharge must be established by clear and convincing proof, a mere preponderance of the evidence will not carry the day.

Applying the foregoing principles to the facts of this case, it is clear that Harris failed to establish with the requisite degree of proof required, therefore, is not entitled to an order barring the Debtor's discharge. The duty of the Debtor to maintain books and records is not absolute and the law does not require that they be kept in any particular manner. The adequacy of records must be determined by considering the extent and the nature of the business involved and the totality of the circumstances relevant to the business activities of the Debtor. While it is true that the basic books and records of a business such as the one engaged in by this Debtor were not produced, records were available which show that the Debtor did, keep adequate books and records. Although the Debtor failed to produce a full set of books and records, such failure to produce appears to be justified under the circumstances. In any event, the most that could be said is that the evidence on this point is in equilibrium.

Likewise, the claim that the Debtor made a false oath in bankruptcy was not borne out by the requisite proof. The evidence is uncontradicted that the Debtor did borrow money from Mike Carnevalla and that the Debtor endorsed over the title to the 1955 Chevrolet. The fact that Carnevalla failed to record the title, or the lien thereon, in proper fashion cannot be held against the Debtor. Therefore, there is no basis upon which to deny the Debtor's discharge for making a false oath in bankruptcy.

■ This leaves for consideration the claim of non-dischargeability based on § 523(a)(2)(A) and (a)(2)(B). The failure to list certain credit references cannot form the basis of a claim of non-dischargeability where there was neither a request for all credit references nor a statement by the Debtor that all possible credit references were given. The information given was truthful and any reliance by Harris that the references given were a complete list of all possible references is, without a doubt, unreasonable.

■ With respect to the promise to pay for all goods purchased by the 10th day of the month after the purchase, this promise can only form the basis of a claim to non-dischargeability if the Debtor did not intend to fulfill that promise at the time he made it. A promise to perform in the future cannot be fraudulent absent intent not to so perform at the time the promise is made. There is insufficient evidence in this record for this Court to conclude that the Debtor did not intend to fulfill the promise when he made it and at all times subsequent thereto when he made purchases.

The claim that the credit application was, in fact, a statement concerning the Debtor's financial condition is without foundation. A credit application is not a financial statement and other than credit references has little or no relationship to the financial condition of the applicant.

In sum, it is clear that none of the claims can be supported and the Debtor is entitled to a judgment and dismissal of the complaint with prejudice.

A separate final judgment will be entered in accordance with the foregoing.