In re Jerry L. SNYDER and Janet E. Snyder, Debtors.

**HOME FEDERAL SAVINGS AND LOAN ASSOCIATION OF HAMILTON, Plaintiff,**

v.

**Jerry L. SNYDER, Defendant.**

Bankruptcy No. 1–85–02040.
Adv. No. 1–85–0341.

United States Bankruptcy Court,
S.D. Ohio, W.D.

June 18, 1987.

ability of a debt pursuant to § 523(a)(2)(A) and § 523(a)(2)(B), making nondischargeable those debts incurred by false pretenses, false representations or actual fraud, and by use of a false financial statement. The complaint further prays for denial of discharge on the basis that defendant has transferred or concealed property within one year prior to the filing of bankruptcy with an intent to hinder or delay the creditor.

The defendant answered the complaint, and further brought a third-party complaint against Busam Datsun and counterclaims against plaintiff for compensatory and punitive damages. By decision of June 6, 1986, 61 B.R. 268, we dismissed both the third-party complaint and the defendant's counterclaims.

Defendant now moves for summary judgment. Defendant relies on an affidavit of the defendant and other documentary evidence, along with answers to requests for interrogatories and requests for admissions. Plaintiff in opposition to the motion relies on the defendant's 2004 examination transcript, various interrogatories, requests to admit and the affidavit of its agent and an agent of Busam Datsun.

From the evidentiary materials presented, it is not disputed that defendant bought a car from the Busam Datsun dealership.[1] Busam Datsun required that defendant complete a loan application. That loan application is entitled "Credit Application, The First National Bank of Cincinnati", (hereinafter "first application"). The information requested on the first application begins with the name and address of the applicant, the name and address of the mortgage holder or landlord, and the amount of mortgage or rent payment per month. The first application requests information about the applicant's employment, including net salary and other income. It also requires the name and address of a relative and the applicant's bank.

Norbert M. Doellman, Jr., Hamilton, Ohio, for plaintiff.

Jeffrey Bakst, Cincinnati, Ohio, for defendant.

### DECISION ON MOTION FOR SUMMARY JUDGMENT

BURTON PERLMAN, Bankruptcy Judge.

In its complaint in this adversary proceeding, plaintiff contests the discharge-

---

1. There are references to a 1985 Datsun 300ZX and a 1985 Nissan Maxima in the evidentiary material. Defendant later explained that he originally drove away in a 300ZX, but took it back and bought a Maxima. The sales contract reflects that defendant bought a Maxima.

There is a section on the first application titled "Credit References", which has three spaces for such references, asking the applicant to state the name, address, original amount of the credit, the unpaid balance and the monthly installment. There is a space for other obligations, such as alimony or support and for information about applicant's automobile, bank cards and an insurance company. The second half of the application requires the same information for a co-applicant.

It is undisputed that the defendant filled out this first application and signed it.[2] Under "Mortgage Holder", he listed Donald Trapp and Associates. He listed the purchase price of his residence as $109,000.00, with a mortgage balance of $100,000.00 and monthly payments of $700.00. He stated that he is a mail controller with the U.S. Postal Service and that he had a net salary of $48,000.00 per year. He also indicated that he had a V.A. pension of $70.00 per month. Under "Credit References", he listed a Provident Bank loan of $18,000.00 with an unpaid balance of $14,000.00 and a monthly installment of $404.00. He listed no other credit references or obligations.

Both plaintiff and defendant agree that the first application was filled out at the Busam Datsun dealership and the information contained therein transmitted over the phone to the plaintiff. Plaintiff ultimately underwrote the loan for the purchase of the car.

Plaintiff placed in evidence a two page Home Federal Savings & Loan form apparently completed by plaintiff's agent. It is undisputed that such second loan application (hereinafter "second application") was not completed by defendant and does not bear the defendant's signature. It is fur-

ther undisputed that defendant had no direct contact with plaintiff.[3]

As to the falsity of the first application, plaintiff indicates that defendant's mortgage payment is $900.00 per month, instead of $700.00, and that there is an additional annual payment of $3,000.00. Defendant does not dispute this, but explains that that figure was his "best estimate". Further, plaintiff argues that debtor omitted many debts on this first application. As to the falsity of the second application, plaintiff states that defendant omitted telling plaintiff of debts to Mid-American Acceptance Corporation, Cleveland Clinic, Cincinnati Postal Credit Union, Bank One of Milford, Wilcox & Curtain, and Glen Doan.

The defendant argues that summary judgment is appropriate because the first application only lists "Credit References" and does not ask defendant to list all assets and liabilities. Defendant further argues that the second application is not signed by the defendant.

The plaintiff responds, stating that the defendant was asked for more information and the information he gave was false, that he omitted much more information than he gave, and that plaintiff would not have loaned the purchase price of the car if it had known of these other obligations.

To prevail on its motion for summary judgment, the defendant must show that there is no genuine issue of material fact and that the elements of § 523(a)(2)(A) or (a)(2)(B) cannot be met and therefore he is entitled to judgment as a matter of law. That section reads:

(a) A discharge under section 727, 1141, [or 1328(b)], 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\*　　\*　　\*　　\*　　\*　　\*

---

**2.** Defendant testified at the 2004 examination that, in fact, some of the writing of the first application is not his.

**3.** There is, among plaintiff's evidentiary materials, a Home Federal Savings and Loan application signed by the defendant, but it is blank. The defendant, in his 2004 examination, did state that he signed some form in blank, but there is no clear explanation of how this came

about, or what reliance plaintiff places on it. However, in response to an interrogatory propounded on plaintiff as to whether plaintiff ever contacted defendant to inquire about any questions concerning the loan application or information the plaintiff replied, "The contract was made through Busam Datsun according to the usual procedure for an indirect loan."

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

    (B) use of a statement in writing—

    (i) that is materially false;

    (ii) respecting the debtor's or an insider's financial condition;

    (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

    (iv) that the debtor caused to be made or published with intent to deceive; or

    \*    \*    \*    \*    \*    \*

In order to prevail on its claim under § 523(a)(2)(B), the plaintiff must show, by clear and convincing evidence, that defendant provided a statement in writing that was materially false, with respect to the debtor's financial condition, which was relied on by the plaintiff, and that the debtor caused to be made or published the statement with intent to deceive. *In re Black*, 787 F.2d 503 (10th Cir.1986).

■ As to the first application, there is no genuine issue of material fact that plaintiff cannot prove the above-stated elements by clear and convincing evidence, and therefore the defendant is entitled to summary judgment as a matter of law. As a threshold matter, there is no evidence that plaintiff ever received this first application prior to approving the loan. The evidence is clear that the application was filled out at Busam Datsun and the information contained in it transmitted over the phone to plaintiff's agent by Busam Datsun's agent. The affidavit of plaintiff's agent states:

    The Snyder transaction originated toward the end of January, 1985, when Bill McIntyre of Busam Datsun phoned in a credit application on Jerry Snyder for him to purchase a 1985 Maxima GL Sedan.

Furthermore, the first application is not a written financial statement which purports to require that defendant list all assets and all liabilities. Clearly, defendant did not assert, by signing the first application or by filling it out, that the information given was with respect to defendant's *complete financial condition.*

The facts of this case are similar to those in *In re Ciarleglia,* 50 B.R. 455 (Bankr.M. D.Fla.1985). The court describes the application in that case as follows:

    The application requested that the Debtor furnish credit references with indications of whether the account was open or closed. There were spaces for the Debtor to list five references; however, the Debtor listed only four and indicated all four were open accounts.

*Id.* at 456.

The plaintiff in that case investigated the four references and, finding them current, gave the debtor the loan. The court found:

    The failure to list certain credit references cannot form the basis of a claim of nondischargeability where there was neither a request for all credit references nor a statement by the Debtor that all possible credit references were given. The information given was truthful and any reliance by [plaintiff] that the references given were a complete list of all possible references is, without a doubt, unreasonable.

    \*    \*    \*    \*    \*    \*

    The claim that the credit application was, in fact, a statement concerning the Debtor's financial condition is without foundation. A credit application is not a financial statement and other than credit references has little or no relationship to the financial condition of the applicant.

*Id.* at 458.

*See also In re Salleet,* 53 B.R. 925 (Bankr. Mass.1985); *In re Andrews,* 33 B.R. 970 (Bankr. Mass.1983) (in which the court stated "where a financial statement fails to solicit sufficient information to accurately portray an applicant's financial condition, the creditor cannot claim that its reliance on the application was reasonable [citations omitted]. Here, the application was so deficient it could not present an accurate

picture of financial status. It fails to inquire into ownership of assets or encumbrances such as mortgages. The bank's reliance on this inherently unreliable financial statement cannot be considered reasonable.")

Since the undisputed facts show that the first application is not a written financial statement upon which the plaintiff could reasonably rely, the first application is not actionable under § 523(a)(2)(B).

■ Furthermore, plaintiff cannot rely on the second application which was undisputably not prepared by defendant as a written financial statement. Although a statement need not be signed by the debtor in order to be actionable under § 523(a)(2)(B), *See In re Shelton*, 42 B.R. 547 (Bankr.E.D.Mo.1984), the statement must be a writing which "the debtor caused to be made or published with intent to deceive". § 523(a)(2)(B)(iv). In order for a writing to be actionable, the statement must have been written by the debtor, signed by the debtor or adopted and used by the debtor. Collier on Bankruptcy, 15th Ed. ¶ 523.09[1].

It is undisputed that the defendant never saw, signed, acknowledged or reviewed the second application prior to the approval of the loan. Indeed, defendant had no direct contact with the plaintiff in the preparation of the second application. We find that there is no genuine issue of material fact that the second application is not "a writing which debtor caused to be made or published with intent to deceive" that is actionable pursuant to § 523(a)(2)(B).

■ Finally, plaintiff cannot prevail under § 523(a)(2)(A).[4] The law is settled that statements respecting a debtor's financial condition must be in writing and otherwise comply with § 523(a)(2)(B) or they are not actionable. The language of the statute excludes as actionable any statements respecting the defendant's financial condition not made in writing. *See also In re Roberts*, 54 B.R. 765 (Bankr.D.N.D.1985) (in

which the court stated, "to be actionable under § 523(a)(2), a statement respecting the debtor's financial condition must be in writing and otherwise meet the requirements of (a)(2)(B)"; *In re Steinberg*, 744 F.2d 1060 (4th Cir.1984) (in which the court held "false representations or false pretenses which are transmitted orally respecting a debtor's financial condition are not actionable under § 523(a)(2)"); *In re Cook*, 46 B.R. 545 (Bankr.E.D.Va.1985); *In re Gelfand*, 47 B.R. 876 (Bankr.E.D.Pa. 1985); *In re Usoskin*, 56 B.R. 805 (Bankr. E.D.N.Y.1985).

In conclusion, there is no genuine issue of material fact that the first application completed and signed by the defendant is not a statement reflecting the defendant's financial condition, and that any reliance by the plaintiff on this application was unreasonable. Furthermore, there is no genuine issue as to material fact that the second application was not prepared, caused to be made or published by the defendant and, therefore, does not meet the requirements of § 523(a)(2)(B)(iv). Furthermore, as a matter of law, plaintiff cannot prevail under § 523(a)(2)(A) based on any non-written misrepresentations that the defendant may have made concerning his financial condition. Lastly, in respect to the allegation that the defendant should be denied a discharge for concealing assets or hindering a creditor, the plaintiff admits in the answers to interrogatories and requests for admissions that they have no evidence to support this allegation.

■ Because we find for the defendant, and hold that the debt owed to plaintiff is dischargeable, we are also obligated to look to § 523(d), which reads:

If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the

---

**4.** Although plaintiff alleges in its complaint that it is relying on § 523(a)(2)(A), the material submitted does not specify exactly what representations plaintiff relied on other than the two loan applications which we have already discussed. Indeed, the evidence shows no direct representations made by defendant to plaintiff.

court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

It is unquestionable that the position of the creditor was not substantially justified.

Plaintiff in this case sued for nondischargeability pursuant to § 523(a)(2)(A), even though it had no evidence of any fraudulent representation, and for nondischargeability pursuant to § 523(a)(2)(B) even though it had "no written false financial statement". Therefore the debtor will be awarded reasonable attorney fees and the costs of the action. *See In re Carmen,* slip op., Adv. No. 1–81–0296 (Bankr.S.D. Ohio 2–1–82), aff'd 723 F.2d 16 (6th Cir. 1983).[5]

Attorney for defendant will submit an itemization of his time and expenses to the court within ten days of entry of the present order. Such itemization will be subject to review by the Court.

## JUDGMENT OF DECISION BY THE COURT

This proceeding having come on for decision by the court, Honorable Burton Perlman, United States Bankruptcy Judge, presiding, and the issues having been duly considered and a decision having been rendered,

It is Ordered and Adjudged that the issues are found in favor of defendant, that defendant is entitled to summary judgment, that the complaint is dismissed, and attorneys fees for defending the action shall be paid to defendant by plaintiff after review by the Court.

---

5. In *In re Carmen,* we held that defendant was entitled to attorney fees where creditor had no evidence on one of the four necessary elements in § 523(a)(2)(B). Here, plaintiff did not have any evidence on any of the necessary elements of § 523(a)(2)(A) or § 523(a)(2)(B).