In re Ross REINHART and Bonnie Reinhart, Debtors.

Natalie SMOLIK, Plaintiff,

v.

Ross M. REINHART and Bonnie L. Reinhart and Buddy Ford, Trustee, Defendants.

Bankruptcy No. 87–6414–8P7.
Adv. No. 88–59.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Aug. 4, 1988.

Saxton Gaskin, III, Clearwater, Fla., for plaintiff.

John H. Stewart, St. Petersburg, Fla., for defendants.

Buddy Ford, St. Petersburg, Fla., trustee.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a contested discharge proceeding and the matters under consideration are two claims set forth in the adversary proceeding commenced by Natalie Smolik (Plaintiff) against Ross Reinhart, Bonnie L. Reinhart (Debtors) and Buddy Ford as Trustee. The original complaint consists of two counts. In Count I the Plaintiff seeks a determination by this Court that defendant Ross M. Reinhart (Mr. Reinhart) is indebted to the Plaintiff in the amount of $47,500.00 and this debt should be declared to be nondischargeable based on the allegation that Mr. Reinhart obtained funds from the Plaintiff by false pretenses and by actual fraud. In addition the Plaintiff in this Count also seeks punitive damages, an assessment of costs, interest, and reasonable attorney fees. In Count II of the Complaint, the Plaintiff seeks an order from this Court directing the Trustee to examine the conduct of the Debtors in order to determine whether or not grounds existed for denial of the Debtors' discharge. In due course, the Debtors and the Trustee filed their respective answers to the Complaint. However, Count II of the Complaint was voluntarily dismissed by the Plaintiff on April 29, leaving Mr. and Mrs. Reinhart as the only Defendants. The facts relevant to the remaining claim as developed at the final evidentiary hearing reveal the following:

Mr. Ross Reinhart (Mr. Reinhart) was at one time a minister of the Church of the

Nazarene, and he was engaged in several businesses, but by the fall of 1986 he was no longer in business because of ill health. In early October 1986 the Plaintiff through a mutual friend met Mr. Reinhart who, after indicating to the Plaintiff that he wanted to go back into business but lacked funds to start the business, asked the Plaintiff for $10,000 for the purpose of renting a place of business to start a silk screen printing business and buying some equipment for the same. It is without dispute that the Plaintiff did issue one check payable to Ross Reinhart in the amount of $5,000 drawn on the account of the Chase Bank of Florida and a second check on the same date in the same amount drawn on a First Federal Savings and Loan account. Both checks carry the legend "loan."

In November of the following month, Mr. Reinhart told the Plaintiff that he was apprehensive that he was going to lose his home because he was behind on his mortgage payments, and the Plaintiff subsequently gave Mr. Reinhart a check in the sum of $4,600 to make the delinquent payments on his house. Meanwhile, the business in fact had started and, although it is unclear to what extent, did manufacture some bags for banks. On January 13, 1987, Mr. Reinhart told the Plaintiff that he wanted to buy an automatic multi-print silk printing machine for which he needed $22,250 as a down payment. Mr. Reinhart also told the Plaintiff that this would be handled as an investment by her in the corporation which he was to form and in which the Plaintiff would receive 51% of all outstanding shares. The business which, as noted earlier, had already started in the fall and was operating under the name of Southern Exposure Screen Printing and maintained a checking account under that name.

It is without dispute the Plaintiff did in fact involve herself in the operation of the business, albeit to a limited extent. She wrote checks on the account of Southern Exposure Screen Printing and was basically familiar with the cash position of the business, so much so that on January 20, she deposited $1,000 in the business account and three times deposited an additional $1,000 to cover operating expenses of the business. There is no question that she made these advances to the business voluntarily and not pursuant to any request made by Mr. Reinhart. The evidence is uncontroverted that she made these payments because she did not want the business she was involved in to have outstanding or unpaid bills. It is equally without dispute that the business was never incorporated and, of course, the Plaintiff never received corporate stock establishing a 51% interest in the corporation promised to be formed by Mr. Reinhart.

The record indicates the only repayment she ever received from Mr. Reinhart was $200 although she received some other checks but none of them were honored by the drawee bank. There is nothing in this record to indicate that the Plaintiff had any dealings with Mrs. Reinhart at any time.

■ This is the entire record based on which this Court is called upon to determine the viability of the claim asserted by the Plaintiff in Count I of the Complaint. It should be noted at the outset there is no question that neither the initial $10,000 advanced on October 20, 1986, the $4,600 advanced on November 10, the $1,000 advanced on January 20, nor the three additional advancements in the amount of $1,000 each were advanced or loaned by the Plaintiff to Mr. Reinhart on the reliance of any statement, let alone false statements made by Mr. Reinhart. Thus, the claim of nondischargeability concerning these amounts clearly cannot be sustained on this record.

This leaves for consideration the dischargeability vel non of the sum of $28,-550.91 loaned or advanced by the Plaintiff on January 13 for the purpose of purchasing an automatic silk screen printing machine and the balance of $449.09 to be used as operating capital. It is without dispute that the down payment was made on the machine but it was never actually acquired because in the meantime the Plaintiff voluntarily decided not to be united with Mr. Reinhart any further and refused to advance any additional funds. Due to Mr.

942

Reinhart's inability to carry on the business, the business ultimately failed.

Based on this scenario, it is the contention of the Plaintiff that she did advance the $28,550.91 in reliance on the statement and promise of Mr. Reinhart that he would form a corporation and that she would receive 51% of the outstanding shares in the corporation.

 It is a well established proposition that one cannot establish actionable fraud based on a promise to do something in the future unless there is proof that at the time the promise was made the promisor had no intention to fulfill the promise or as a matter of fact or a matter of law the person is unable to fulfill the promise. *In re Ciarleglia,* 50 B.R. 455 (Bkrtcy.M.D.Fla. 1985); *In re Fordyce,* 56 B.R. 102 (Bkrtcy. M.D.Fla.1985); *Bissett v. Ply–Gem Industries, Inc.,* 533 F.2d 142 (5th Cir.1976); *In re Firestone,* 26 B.R. 706 (Bkrtcy.S.D.Fla. 1982). There is some evidence that Mr. Reinhart did intend to form a corporation, but because of a sloppy business organization he did not seriously pursue the matter although made some attempt to contact an accountant as to how to form a corporation. However, the record is equally consistent with the proposition that he never actually intended to form a corporation. It is clear under the established law that the burden of proof is on the Plaintiff to establish fraud by clear and convincing evidence. *In re Barrup,* 37 B.R. 697 (Bkrtcy.Vt.1983) Inasmuch as the evidence on the crucial issue is in equilibrium and equally supports the claim of the Plaintiff and the position urged by Mr. Reinhart, there is hardly any question that the Plaintiff failed to carry this burden and for this reason the claim of nondischargeability cannot be sustained.

A separate Final Judgment will be entered in accordance with the foregoing.