**In the Matter of Michael FORDYCE, Debtor.**

**The CHASE MANHATTAN BANK, Plaintiff,**

v.

**Michael FORDYCE, Defendant.**

**Bankruptcy No. 84–2737.
Adv. No. 85–125.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 17, 1985.

Bruce A. Nants, Orlando, Fla., for plaintiff.

Gordon H. Coffman, Fort Myers, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is the dischargeability, vel non, of a debt in the amount of $15,869.76, admittedly due and owing by Michael Fordyce (Debtor) to Chase Manhattan Bank (Chase). The Complaint challenging the dischargeability of this debt is based on the claim of Chase that the Debtor obtained a loan from Chase by false represen-

tation on which Chase relied when it granted the loan and, therefore, based on § 523(a)(2)(A) of the Bankruptcy Code, this obligation should be removed from the overall protection of the general bankruptcy discharge.

The facts, as developed at the final evidentiary hearing, are basically without dispute although the interpretation of those facts are not. The facts can be summarized as follows:

At the time relevant to the transaction under consideration, the Debtor was a professor of psychology employed by the Edison Community College in Ft. Myers, Fla. On or about June 20, 1984 the Debtor submitted a loan application to Chase and sought a loan in the amount of $15,000. This was a mail transaction and there is no evidence in this record that this Debtor ever had any direct face to face contact with any of the agents or employees of Chase, at least not in connection with this particular transaction.

On the loan application submitted by the Debtor, he stated that he received from the college an annual salary of $31,000; that in addition he earned $20,000 from a private practice, acting as a consulting psychologist for Cypress Lake Professional Center in Ft. Myers, Fla.; that he also operated a mail order business involving a publishing company from which he has earned $4,000; and, lastly, he stated that he had an income from a day care center of $30,000 per year. The loan application was submitted to Chase on July 11, 1984. On July 19, 1984, the Debtor, in response to a request by Chase, sent a letter to Chase in which he enclosed his tax records for the purpose of verifying his income. Since there was a discrepancy between the figures appearing in the tax return and the loan application, by way of explanation the Debtor stated in the letter that the tax return revealed his actual income for the tax year 1983, at which time he had taken a three month leave of absence without pay which accounted for a reduction in the amount of $9,000 from his annual salary and a reduction of $4,000 from his private practice.

During the year 1983 the Debtor heavily invested in the day care center which, at that point, was breaking even. The letter also stated, however, that the Debtor was anticipating an income of $1,000 to $3,000 a month from the day care center in the coming year since the operation, hopefully, would be turned around.

The transmittal to Chase did not include a balance sheet containing the assets and liabilities of the day care center nor did it include any operating statement of the day care center or any other documentation which reflected the financial soundness of the operation. None of these documents were ever requested by Chase in order to substantiate the basis for the anticipated income from this operation.

The loan was approved by Chase in due course and the Debtor received a check from Chase in the amount of $15,000 and in connection with that transaction, executed a promissory note in the same amount. This was an installment loan which called for the repayment of the loan in sixty (60) equal monthly installments. The first installment became due on September 16, 1984 in the amount of $379.45. It is without dispute that the Debtor has not made any payment on this obligation at all and on November 30, 1984 the Debtor filed his voluntary petition for bankruptcy.

Although it is not clear, it further appears, however, that the day care center was, in fact, claimed to have been owned by the Debtor's wife and not by the Debtor, contrary to the statement on the loan application by the Debtor that he was the owner of the day care center. This last statement forms the sole basis for the claim of non-dischargeability asserted by Chase.

It is without dispute that the Debtor repeatedly made inconsistent statements concerning the ownership of the day care center. As noted earlier, in his loan application he indicated that he was the owner and that he received an income from the center. During the proceeding and until after the commencement of this litigation, he took the position that he was the owner,

although in response to interrogatories he indicated that the day care center was, in fact, owned by his wife alone.

Be that as it may, whether or not his claimed ownership of the day care center stated on the loan application was true or false is really without any significance and has no bearing on the outcome of this litigation. This is so because it is clear that Chase did not rely on any of the assets of the day care center when it granted the $15,000 loan to the Debtor. This was a totally unsecured loan and there is hardly any doubt that the only thing Chase relied on in granting the loan was the Debtor's ability to meet the monthly installment obligations under the note of $379.45. Thus, in making this decision, Chase, without any doubt, relied solely on the integrity of the borrower as a professional man and on his disposable income. One need not needlessly postulate that a full time professor with additional income from private practice had the integrity and also the ability to live up to an obligation assumed when he obtained this loan, even without any income obtained from the operation of a day care center. It is without dispute that this was a business loan, proceeds were, in fact, used for the improvement of the day care center.

The ultimate question is whether or not the Debtor's projection to earn $30,000 per year or the statement that the operation of the day care center is going to become profitable and produce a profit of between $1,000 and $3,000 a month was reasonable and justified under the circumstances.

11 U.S.C. § 523(a) deals with exceptions to discharge and, inter alia, provides as follows:

> *§ 523(a). Exception to Discharge*
> (a) A discharge under ..... this title does not discharge an individual debtor from any debt—
> (2) for obtaining money, property, services, or an extention renewal or refinance of credit, by—
> (A) false pretenses, a false representation, or actual fraud....

It is well established that the overriding purpose of the bankruptcy laws is to provide the debtor with comprehensive, much-needed relief from the burden of his indebtedness by releasing him from virtually all his debts. *Perez v. Campbell*, 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233 (1971); *Hartman v. Utley (In re Schroeder and Co.* ), 335 F.2d 558, 560 (9th Cir.1964); *Hardie v. Swafford Brothers Drygoods Co.*, 165 Fed. 588, 590–591 (9th Cir.1908). Courts generally narrowly construe the exceptions to the discharge against the creditor and are always in favor of the debtor. *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *In re Vickers*, 577 F.2d 683, 687 (10th Cir.1978); *Davison-Paxon v. Caldwell*, 115 F.2d 189, 191 (5th Cir.1940); *Matter of Cross*, 666 F.2d 873 (5th Cir.1982).

█ Thus, it is clear that the burden lies with the creditor to demonstrate that a particular obligation of a debtor falls within one of the statutory exceptions. *Household Finance Corp. v. Danns (In re Danns)*, 558 F.2d 114, 116 (2d Cir.1977); *Kelley v. Conwed Corp.*, 429 F.Supp. 969, 972–973 (E.D.Va.1977).

█ The quantity and quality of the proof required to be presented by the creditor who challenges the dischargeability under this section must reach a degree of clear and convincing evidence. The fraud included in this section is the type of fraud which, in fact, involves moral turpitude or intentional wrong and fraud implied in law which may exist without imputation of bad faith or immorality is insufficient. *In re McAdams*, 11 B.R. 153 (Bankr.D.Ver.1980). See also *Underwood v. Ajax Rubber Co., Inc.*, 296 S.W. 964, 11 Am.B.R. (N.S. 488 Tex.Civ.B.P.1927); *In the Matter of Noble*, 42 F.Supp. 684 (D.C.D.Colo.1941).

█ The claim of non-dischargeability is based on a false representation. The false representation generally must relate to an existing material fact. Although it is not established that it might be sufficient to show that while the statement did not relate to an existing material fact and re-

lated to something which might occur in the future, such statement must be made recklessly and totally without any rational basis. As stated in *In re Firestone*, 26 B.R. 706 (Bankr.S.D.Fla.1982) ".... is generally treated as a material existing fact and if the promise was made with a positive intent not to perform or without a present intent to perform or made when a promisor knew or should have known that his prospective inability to perform, misrepresentation can be found to be fraudulent even though the statement did not relate to an existing material fact". Declarations of predictions or opinions as to future events which the declarant does not, in fact, hold or declarations made with reckless indifference for the truth may be found to be fraudulent.

■ Applying the foregoing test to the facts as developed in this record, this Court is satisfied that Chase failed to discharge the burden placed on it by law to establish with the requisite degree that the Debtor was, in fact, guilty of actionable fraud which, in turn, would warrant a declaration of exception to discharge. While it is true that on the loan application the Debtor stated that he had an income of $30,000 per year from the operation of the day care center, it is equally true that subsequently when he wrote the letter to Chase, he explained and it is evident to Chase at that point that the income was not, in fact, income earned but anticipated and hoped for and the letter stated that the operation was breaking even but he hoped to turn it around in the future which, in turn, would then produce the income which he stated on the loan application.

The most that could be said in this situation concerning this entire record is that the evidence is equally consistent with the proposition urged by Chase that the statement by the Debtor concerning his income was reckless disregard of the truth and the proposition by the Debtor that it was an optimistic projection, totally lacking any intent to defraud Chase. More importantly, this Court is satisfied that Chase placed no reliance on the statement of the projection or Debtor's expectation of future income, or if they did it was a totally unjustified reliance.

Based on the foregoing, it is clear that since the ownership issue is irrelevant to the matters under consideration, (whether that was true or false makes no difference), and in light of the fact that the anticipated income statement by the Debtor would not qualify to be an actual gross disregard in the reckless fashion of the truth of an existing fact, this Court finds that Chase did not carry its burden and, thus, its claims of non-dischargeability must fail.

A separate final judgment will be entered in accordance with the foregoing.