In re Henry W. EVANS and Grace M. Evans, Debtors.

Harlan W. LOOMAS and Carole S. Loomas, as Trustees of the 1990 Loomas Family Trust, dated April 3, 1990, Plaintiffs,

v.

Henry W. EVANS and Grace M. Evans, Defendants.

Bankruptcy No. 94–02249–A7.

Adv. No. 94–90398–A7.

United States Bankruptcy Court, S.D. California.

April 20, 1995.

Michael Wischkaemper, Carlsbad, CA, for plaintiffs.

Stephen K. Haynes, San Diego, CA, for defendants.

## OPINION

GEORGE BRODY, Visiting Bankruptcy Judge.

This is an action to except a debt from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(4) of the Bankruptcy Code. This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 157 and § 1334. This is a core proceeding in which the Court is authorized to hear and determine all matters relating to this case. 28 U.S.C. § 157(b)(2)(I).

### FACTS

Harlan Loomas (plaintiff) was a C.P.A., worked in the construction industry and, in 1974, formed a hospital management company. In 1986, the company was sold and the plaintiff retired. Henry Evans (debtor) obtained his real estate license in the early 1970s and was the sole owner of a real estate brokerage firm. The plaintiff and debtor were both members of the Vista Valley Country Club. They met in 1988 and played golf at the club two or three times a week for about two years. When they met, the plaintiff owned a home in Fallbrook, a vacant lot in Fallbrook, property in Vista Valley and a condominium in Oceanside. As a result of their weekly golf outings, the plaintiff and debtor developed a friendship and a business relationship. In April of 1990, the plaintiff gave the debtor an exclusive listing to sell his Vista Valley property and the vacant land in Fallbrook. In August of 1990, the debtor sold plaintiff's Vista Valley property to Mr. and Mrs. John R. Pratt ("Pratt") for $399,800. Pratt made a down payment of $50,000 and gave plaintiff a note for $349,000, with interest at the rate of 10.2 percent per annum, secured by a deed of trust for the remainder of the purchase price.

In December of 1990, the debtor approached the plaintiff to borrow $110,000 to pay off a judgment lien. The plaintiff informed the debtor that he would be willing to make the loan but did not have sufficient funds available to do so. Since the debtor had represented the plaintiff in the sale of his Vista Valley property to Pratt, the debtor knew that a substantial part of the purchase price was still unpaid—actually approximately $375,000. The debtor informed the plaintiff that he thought he could persuade Pratt to prepay his note and thereby provide plaintiff with sufficient funds to make the $110,000 loan. The plaintiff indicated that he had no objection to the debtor attempting to persuade Pratt to do so. The debtor approached Pratt and Pratt indicated that he would be willing to satisfy his existing $375,000 obligation by making a cash payment of $275,000 and transferring ownership of a Vista Valley condominium[1] ("condominium"), that he was attempting to sell, to satisfy the remaining note balance of approximately $92,000. This proposal obviously would provide the plaintiff with sufficient funds to make the $110,000 loan to the debtor. The proposal was acceptable to the plaintiff except that he did not want to own another piece of property in Vista Valley. Plaintiff suggested that the debtor take ownership of the condominium and provide him with a deed of trust to secure the payment of the $92,000. This suggestion, however, was not feasible since the debtor did not have sufficient cash flow to take care of the current expenses of the condominium until it was sold. They finally agreed that the debtor would be the equitable owner of the condominium but title would be held by the plaintiff who would pay the mortgage, insurance, homeowners association dues, and other current expenses, and recover such payments when the condominium was sold.

When the debtor initially approached the plaintiff to borrow the $110,000, he informed the plaintiff that he would give him a second deed of trust on his home located in Vista, California, as security for the loan. The title report ordered by the plaintiff revealed that the property was encumbered by a $404,000 first deed of trust and a $65,000 second deed

---

1. Not the condominium purchased from the plaintiff.

of trust. The plaintiff informed the debtor that he would not make the loan if the second deed of trust remained on the property. The debtor stated that he intended to pay off the $65,000 deed of trust upon receiving the $110,000 loan. However, the debtor apparently changed his mind and decided to restructure the loan. The debtor owned a vacant lot in Vista, California, suitable for a single family residence, that was encumbered by a $65,000 deed of trust. He informed the plaintiff that he would borrow $65,000 instead of $110,000 and give the plaintiff a second deed of trust on the vacant lot. The plaintiff ordered a title search, determined that the only existing encumbrance was the $65,000 first deed of trust, and agreed to make the loan.

The agreement between Pratt and the plaintiff to renegotiate the $375,000 note and the plaintiff's agreement to make the $65,000 loan were carried out as follows: On February 13, 1991, Pratt paid $275,000 to the plaintiff and delivered title to the condominium to the plaintiff in payment of the $91,779.25 balance due on the $375,000 note. The plaintiff and the debtor also agreed that the $91,779.25 obligation and any current expense advances that the plaintiff would make would bear interest at the rate of 10.2 percent per annum, the same interest rate of the Pratt note. The debtor and the plaintiff also agreed that the debtor would sell the condominium and, after payment of the existing encumbrances and the required payments to the plaintiff, the debtor would retain any excess sale proceeds. Contemporaneously with these transfers, the plaintiff loaned $65,000 to the debtor and received a promissory note that also carried an interest rate of 10.2 percent and a second deed of trust on the debtor's Vista lot to secure the loan. The note provided for the payment of interest only until August 1992 when the principal balance and any accrued interest became payable.

The plaintiff and the debtor expected the condominium to be sold within two or three months. However, shortly after the condominium was transferred to the plaintiff, a slope failure occurred in Vista Valley and the debtor was unable to market the condominium. Increasingly concerned about being able to sell the condominium at a price sufficient to recover the balance due to him on the Pratt note and to recoup his advances, the plaintiff stopped making current expense payments and, as a result thereof, the condominium was lost by foreclosure. The debtor's Vista lot was also lost by foreclosure. The plaintiff did not receive any distribution from the foreclosure of the condominium or the lot.

On March 1, 1994, the debtor and his wife, Grace Evans, filed a petition for relief under Chapter 7 of the Bankruptcy Code. On June 3, 1994, the plaintiff filed a complaint against them to except from discharge an alleged debt of $207,555, plus interest, pursuant to § 523(a)(2)(A) and § 523(a)(4) of the Bankruptcy Code.

## *DISCUSSION*

Section 523(a)(2)(A) provides, in relevant part, that:

(a) A discharge under section 727, ... of this title does not discharge an individual debtor from any debt—

    \*      \*      \*      \*      \*      \*

(2) for money, property, services, ... to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud ...

The plaintiff contends that his debt is nondischargeable pursuant to § 523(a)(2)(A) because the debtor and his wife incurred the debt by false representations and actual fraud.

## 1. FALSE REPRESENTATIONS

To prevail in an action based on false representations, a creditor must establish that:

(1) the debtor made representations;

(2) at the time he knew were false;

(3) he made these representations with the intention and purpose of deceiving the creditor;

(4) the creditor relied on such representations; and

(5) the creditor sustained the alleged loss and damage as the proximate result of the representations having been made. *In re Britton,* 950 F.2d 602, 604 (9th Cir. 1991). In addition, the creditor must establish not only that he relied upon the representation, but that his reliance was justifiable. *In re Kirsh,* 973 F.2d 1454 (9th Cir. 1992). The plaintiffs must prove each and every element of a § 523(a)(2)(A) action by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Lawler,* 141 B.R. 425 (9th Cir. BAP 1991).

The plaintiff contends that he loaned $65,000 to the debtor based on representations by the debtor that (1) there was sufficient equity in the lot to cover an existing $65,000 first deed of trust and the $65,000 second deed of trust that he would receive as security for the loan; and (2) that the lot was "buildable." The plaintiff further contends that the representations were false; that the false representations were made solely to induce him to make the loan; that he relied upon the representations; and that he sustained the loss of $207,555 (the $65,000 loan to the debtor, the $91,779.25 balance due on the Pratt note and $50,938 that he advanced to maintain the condominium) as a result of such representations and therefore this loss constitutes a dischargeable debt by virtue of § 523(a)(2)(A) and § 523(a)(4).

The debtor denies that he made such representations. Moreover, he maintains that, even if the representations were made, the representation with respect to value is merely an opinion and does not give rise to an action under § 523(a)(2)(A). Additionally, the debtor contends that the representation that the lot was "buildable" was not false and finally that the debtor did not rely on the representations and, if he did, his reliance was not justifiable.

## 2. VALUE AND BUILDABILITY REPRESENTATION

The record clearly establishes that the debtor represented that the value of the lot exceeded the existing $65,000 first deed of trust plus the $65,000 second deed of trust that was to be given to the plaintiff as securi-

ty for the loan and that the debtor represented that the lot was "buildable."

## 3. REPRESENTATION OF VALUE— FACT OR OPINION

■ To support a § 523(a)(2)(A) action, the creditor must establish that the debtor made a false representation with respect to an existing and ascertainable fact. *In re Fravel,* 143 B.R. 1001 (Bankr.E.D.Va.1992); *In re Schwartz & Meyers,* 130 B.R. 416 (Bankr.S.D.N.Y.1991). A representation of value generally is merely a statement of opinion and, as such, it "does not support a fraud claim either under common law or under the Bankruptcy Code." *In re Pascucci,* 90 B.R. 438, 444 (Bankr.C.D.Cal.1988). However, "this rule presupposes that such a representation does in fact represent the declarant's opinion." *In re Sumpter,* 136 B.R. 690, 696 (Bankr.E.D.Mich.1991).

The debtor testified at trial that when he represented that the lot had a value in excess of the $65,000 first deed of trust and the $65,000 second deed of trust that was to be given to the plaintiff, the lot actually had a value of between $80,000 and $100,000 and that there was not enough equity in the property to adequately secure the $65,000 first deed of trust and the plaintiff's $65,000 deed of trust.

■ When the debtor represented that the lot had a value in excess of the existing $65,000 deed of trust and the plaintiff's $65,000 deed of trust, he knew that that representation was false. He made the representation with reckless indifference to the truth solely to induce the plaintiff to make the loan. Representations of value "which the declarant does not, in fact, hold or declarations made with reckless indifference for the truth may be found to be fraudulent." *Chase Manhattan Bank v. Fordyce,* 56 B.R. 102, 105 (Bankr.M.D.Fla.1985); *In re Rubin,* 875 F.2d 755, 759 (9th Cir.1989). "A false statement regarding the value of property, which is not made in good faith, and which is not warranted by the knowledge or belief of the owner, may furnish the basis of an action for rescission on the ground of fraud or deceit." *Vah Dah Dunshee v. Boadway,* 119 Cal.App.

678, 684, 7 P.2d 325 (1932). The debtor's representation of the value of the lot furnishes the basis for an action under § 523(a)(2)(A).

## 4. BUILDABILITY OF THE LOT

■ To build a residential home in Vista, the Vista City Code requires that the lot have a 20 foot easement for traffic to and from the home. The debtor's lot had an easement of only fifteen feet. The debtor concedes that the lot is not "buildable" unless the owner obtains a variance or obtains additional easement footage to comply with the Vista City Code. The debtor, however, maintains that a variance can be obtained from the City Council or, alternatively, that sufficient property from other contiguous property owners can be purchased to satisfy the easement requirements of the Vista City Code and therefore the lot is "buildable."

Jo Mackenzie served for six years as a Planning Commissioner for the City of San Marcos, which is adjacent to the City of Vista. She is now the owner of a city planning business which processes variances, use permits, rezoning permits and general plan amendments for property owners. Called as an expert witness, she testified that the word "buildable" is generally understood by builders, brokers and other people in the real estate construction industry to mean a property that is "ready for building in that all access and other utilities are directly available to the property" and that "all you have to do is [obtain] a building permit after you have your architectural plans approved." She also testified that the owner of the lot would not be able to obtain a building permit to build on the lot because the existing easement did not meet the Vista City Code requirements and, therefore, the lot was not "buildable."[2] The debtor contends that the lot was "buildable" because, with appropriate effort and submission of the appropriate applications to relevant governmental authorities, one could eventually obtain permits to construct a single family residence on the lot. This contention was expressly rejected by Ms. Mackenzie as a permissible construction of the term "buildable." This contention is also patently specious. To so define "buildable" would deprive the term "buildable" of any meaning. All property pursuant to this definition would become "buildable" subject only to the constraints imposed by the time that the owner would be willing to expend and the expense he would be willing to incur to satisfy the City Code requirements to obtain a building permit. It is difficult to believe that such a construction of the term "buildable" is seriously urged. The debtor was an experienced real estate broker. He knew the generally understood meaning of the term "buildable." He knew that his Vista lot did not comply with the requirements of the Vista City Code and was not "buildable." When he represented to the plaintiff that the lot was "buildable," he used the term "buildable" to mean what it was generally understood to mean in the real estate construction industry and it was a meaning that he intended to convey to the plaintiff. The debtor was concerned that the plaintiff might not make the loan if he were aware of problems that an owner would encounter to build on the lot. The debtor knowingly and intentionally decided to gamble and misrepresent the "buildability" status of the lot to ensure that the plaintiff would make the loan. The representation that the lot was "buildable" was false.

## 5. RELIANCE

■ To prevail in a § 523(a)(2)(A) action, a creditor must establish not only that the debtor made false representations, that they were made with intent to deceive and that the plaintiff suffered injury, but also that the creditor justifiably relied upon the representations. *In re Kirsh,* 973 F.2d 1454 (9th Cir.1992). Prior to making the loan the plaintiff obtained a title report to determine what encumbrances, if any, there were on the property. The title report assured him that the only encumbrance on the property was a $65,000 first deed of trust. The plaintiff did not make any additional investigation. He did not obtain an appraisal to determine the value of the lot, and did not attempt to independently determine whether the lot was or was not "buildable." It is the contention

---

**2.** See p. 190 of Transcript.

of the debtor that the failure of the plaintiff to make an independent investigation of the value of the property and the "buildability" of the lot requires that the Court find that the plaintiff did not justifiably rely on the representations made by the debtor.

■ To determine whether a creditor did or did not justifiably rely upon representations of a debtor, the "court must look to all of the circumstances surrounding the particular transaction, and must particularly consider the subjective effect of those circumstances upon the creditor." *In re Kirsh* at p. 1460. Reliance or the lack of reliance is to be determined by reference to a "subjective standard which takes into account the knowledge and relationship of the parties themselves." *In re Kirsh* at p. 1458.

■ The plaintiff knew the debtor for approximately two years. They became good friends and played golf two or three times a week during that period. The plaintiff also employed the debtor on three occasions to sell property for him. The plaintiff testified that "I trusted my friend, Hank, who told me what [the lot] was worth." [3] He also testified that "I felt he was ... an expert on values [in the Vista area]. And he was my friend. I felt I could rely on his representation of those values." [4] The plaintiff relied on the debtor's representation that the lot was "buildable" for the same reason. The plaintiff entered into the transactions not for profit, but to accommodate his friend. The $65,000 loan, the $91,779.25 remaining unpaid from the plaintiff's sale of his condominium to Pratt, and the advances he made for current expenses for the condominium that Pratt transferred to him in part payment of the Pratt note, all carried an interest rate of 10.2 percent, the same rate that the Pratt note carried. The plaintiff had no reason to distrust the debtor and every reason to trust him and rely upon his representations concerning the value of the lot and the "buildable" status of the lot. Simply put, the plaintiff relied upon the honesty of an old friend who took advantage of him. This scenario constitutes "a typical case of justifiable reliance." *In re Kirsh* at p. 1460. [5]

The plaintiff has established that the debtor was guilty of making false representations that justify finding that the debt is nondischargeable.

## 6. FRAUD

■ The Court will now address the plaintiff's alternative § 523(a)(2)(A) contention that the debtor by intentionally failing to disclose material facts regarding the Vista lot was guilty of fraud and therefore the debt must be excepted from discharge for this additional reason. Fraud may consist, as the debtor contends, of concealment or intentional nondisclosure, as well as affirmative misrepresentations. "It is well recognized that silence, or the concealment of a material fact, can be the basis of a false impression which creates a misrepresentation actionable under § 523(a)(2)(A)." *Minority Equity Capital Corporation v. Weinstein*, 31 B.R. 804, 809 (Bankr.E.D.N.Y.1983). "It is hornbook law that the concealment of a material fact may be the equivalent of a false representation and be sufficient upon which to predicate a charge of fraud." *In re Milbank*, 1 B.R. 150, 154 (Bankr.S.D.N.Y.1979). *See also In re Harris*, 458 F.Supp. 238 (D.Ore.1976), *aff'd* 587 F.2d 451 (9th Cir.1978), *cert. denied*, 442 U.S. 918, 99 S.Ct. 2840, 61 L.Ed.2d 285 (1979). *In re Thomas*, 12 B.R. 765 (Bankr. N.D.Ga.1981). *In re Quintana*, 4 B.R. 508 (Bankr.S.D.Fla.1980). [6] Thus, to prevail in a

---

3. See p. 60 of Transcript.

4. See p. 62 of Transcript.

5. Nor is there merit to the debtor's contention that since the plaintiff obtained a title report to verify the encumbrances upon the property plaintiff had a duty to investigate all other representations made by the debtor. *In re Ashley*, 903 F.2d 599 (9th Cir.1990).

6. Section 523(a)(2)(A) was derived from § 17(a)(2) of the Bankruptcy Act. The only dif-

ference between § 523(a)(2)(A) and § 17(a)(2) is that the term "actual fraud" was added as a ground for exception from discharge. S.Rep. 95–989, 95th Cong. 2nd Sess. 78 (1978); H.Rep. 95–595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5864, 6320. "Fraud comprises all acts, omissions, and concealments involving a breach of a legal or equitable duty and resulting in damage to another." Black's Law Dictionary (5th Ed.1979). "A false representation of a matter of fact, whether by words or by conduct, by false or

fraud action, the plaintiff must establish that the debtor concealed facts and that the facts concealed were material. Concealed facts are material if "a reasonable man would attach importance to the alleged omissions in determining his course of action." *Titan Group, Inc. v. Faggen*, 513 F.2d 234, 239 (2nd Cir.1975); *In re Harris*, 458 F.Supp. 238, 242 (D.Ore.1976), *aff'd* 587 F.2d 451 (9th Cir.1978), *cert. denied*, 442 U.S. 918, 99 S.Ct. 2840, 61 L.Ed.2d 285 (1979).[7] It is these questions which the Court will now address.

The debtor purchased the vacant lot in 1986 for $12,000, a price materially less than that of other properties in the same development. The debtor knew that he was able to buy the lot for the lower price because a permit to build upon the lot could not be obtained due to the lack of an adequate easement. The debtor knew that, for an owner to develop the property, the owner would either have to obtain a variance from the City of Vista to permit the property to be built with the fifteen foot existing easement or, in the alternative, the owner would have to purchase additional footage to build an easement in conformity with the City of Vista requirements.

On May 10, 1986, the debtor made an application to the Planning Commission of the City of Vista for a variance to permit him to build on the property with the existing easement. The application was denied by the Commission. In 1987, the debtor again applied for a variance, and the Commission again denied the application. The debtor appealed that decision to the City Council of the City of Vista. The City Council upheld the Commission's ruling.

Prior to applying for the variance, the debtor approached contiguous property owners to attempt to purchase additional property to enable him to comply with the City of Vista easement requirement. The debtor

was offered additional footage for $12,500. This purchase, however, would only have taken the debtor part of the way to his property. The debtor would have had to build a 73–foot access driveway from the purchased property to his lot in order to comply with the Vista City Code. Preliminary studies by debtor determined that it would cost approximately $5,000 to do so.

The debtor did not inform the plaintiff that the lot was not buildable in its present state; that he had made applications on two occasions to the City of Vista for a variance and his applications had been denied; that anyone who decided to build on the lot would have to pursue costly proceedings before the Planning Commission to attempt to obtain a variance or, in the alternative, to purchase sufficient additional property to build an easement that complied with the City's requirements. The facts withheld were material facts, facts to which the plaintiff undoubtedly would have attached importance in deciding whether or not to make the loan, facts that the debtor intentionally concealed to mislead the plaintiff. The failure to make these facts available to the plaintiff constitutes fraud actionable under § 523(a)(2)(A).

## 7. DAMAGES

The plaintiff has established that, by virtue of the false representation made by the debtor, and the intentional failure to disclose material facts, the plaintiff suffered the loss of the $65,000 that he loaned to the debtor, the $91,779.25 balance due on the original Pratt note, and $50,398 in payments for current expenses while he was in possession of the condominium. Accordingly, the plaintiff has established that he has a nondischargeable debt of $207,555 plus interest at the rate of 10.2 percent, the same interest rate that he received on the Pratt note which plaintiff refinanced to enable him to grant the loan to

misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury." *Id.* Whatever doubt there may have been prior to the enactment of the Code that fraud may consist of concealment or intentional nondisclosure as well as affirmative misrepresentations of material

facts, is clearly dispelled by the addition of the term "actual fraud" in § 523(a)(2)(A).

7. Reliance is not a factor since it is not possible to rely on facts which have been concealed. "Materiality rather than reliance thus becomes the decisive element of causation." *Titan Group, Inc. v. Faggen*, 513 F.2d 234, 239 (2nd Cir.1975).

the debtor, from the date that the respective obligations arose to the date of judgment. *Bruning v. United States,* 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964); *In re Romero,* 535 F.2d 618, 623 (10th Cir.1976); *In re Kellar,* 125 B.R. 716, 721 (Bankr. N.D.N.Y.1989).

In light of the foregoing, there is no need for the Court to address the plaintiff's contention that the debt is also nondischargeable under § 523(a)(4).

The plaintiff did not present any evidence implicating Grace Evans, the wife of the debtor, and concedes that the complaint against her should be dismissed.

This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. An appropriate order shall be submitted by counsel for the debtor within 10 days from the date of this Opinion.