**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.  NC-16-1125-JuFB |
| | ) | |
| Regan Carroll, | ) | Bk. No.  3:14-bk-30726-HLB |
| | ) | |
| Debtor. | ) | Adv. No. 3:14-ap-03099-HLB |
| _____ | ) | |
| | ) | |
| Regan Carroll, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **M E M O R A N D U M**[*] |
| | ) | |
| Charles I. Jadallah, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on June 22, 2017
at San Francisco, California

Filed - July 21, 2017

Appeal from the United States Bankruptcy Court
Northern District of California (San Francisco)

Honorable Hannah L. Blumenstiel, Bankruptcy Judge, Presiding
_____

Appearances:  Michael B. Cohen argued for appellant Regan
              Carroll; David M. Wiseblood argued for appellee
              Charles Jadallah.
              _____

Before:  JURY, FARIS, and BRAND, Bankruptcy Judges.

---

   [*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

-1-

Appellant Regan Carroll ("Debtor") appeals from the bankruptcy court's judgment holding that part of a loan made by Appellee Charles Jadallah ("Mr. Jadallah") to fund construction of real property is nondischargeable under 11 U.S.C. § 523(a)(2)(A).[1]  For the reasons set forth below, we AFFIRM.

## I.  FACTS

Debtor is a contractor with extensive experience in renovating real property.  Debtor is president and sole shareholder of The Redland Group, Inc. (the "Redland Group") and DogPatch Real Estate Company ("DogPatch").  DogPatch acts as a licensed contractor on renovation projects.[2]  The Redland Group acts as the managing entity on any project by receiving payments from lenders and paying subcontractors for their services performed.  This appeal concerns two loans made by Mr. Jadallah to the Redland Group for renovation of real property.

**A. The 2006 First Loan**

In 2006, Debtor was actively looking for funding from a non-institutional lender to finish various renovation projects.  For this purpose, Debtor was introduced to Mr. Jadallah by Tim Desmond ("Mr. Desmond"), a certified public accountant for both men.  Although Mr. Jadallah was not in the business of making this type of loan, after the two met, Mr. Jadallah agreed to loan the funds to the Redland Group which would be secured by a

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] As a realtor, Debtor also operates a real estate business under DogPatch.

note and first deed of trust on real property located at 721 San Bruno Avenue, San Francisco, California (the "Property"). The terms of the loan included full payment after eighteen months in the amount of $600,000.00 plus interest (the "First Loan"). The First Loan went solely to fund Debtor's then-operating renovation projects, not including the Property.

After the First Loan term expired, due to some difficulties in selling the newly renovated projects, Debtor did not pay back the loan. The parties orally agreed to extend the payment period of the First Loan on the same terms.

**B. The 2012 Second Loan**

Years later, in early 2012, Debtor sought an additional loan from Mr. Jadallah. This loan was to fund the complete remodel of the Property upon which Mr. Jadallah held the first priority lien as a result of the unpaid balance on the First Loan (the "Project").

On August 6, 2012, in order to convince Mr. Jadallah to make the loan, Debtor provided him with detailed plans and a proposed budget for the Project.[3] Based on the proposed plans and budget, Mr. Jadallah agreed to lend the Redland Group $704,860.00.[4] According to the plans, the Project was to be completed within six months. In making the loan, the parties agreed that (a) Mr. Jadallah would merely finance the Project

---

[3] The Project plans were submitted to Mr. Jadallah through Mr. Desmond. For many aspects of the Project, Mr. Desmond acted as a conduit between Debtor and  Mr. Jadallah.

[4] This amount included $60,000.00 for unexpected contingencies.

-3-

and would play no part in its construction, (b) the funds would be paid by Mr. Jadallah to Redland Group in draws on an "as-needed" basis, and (c) Mr. Desmond would review the Project's books and expenditures prior to the funds being released by Mr. Jadallah.

In total, Mr. Jadallah advanced $700,000.00 from January 2013 through August 2013 to fund the Project (the "Second Loan"). The Second Loan was comprised of the following seven funding draws from Mr. Jadallah to the Redland Group at the request of Debtor:

| Second Loan Date | Second Loan Amount |
| --- | --- |
| January 22, 2013 | $50,000.00 |
| January 29, 2013 | $150,000.00 |
| March 7, 2013 | $100,000.00 |
| May 14, 2013 | $200,000.00 |
| May 28, 2013 | $100,000.00 |
| August 9, 2013 | $50,000.00 |
| August 9, 2013 | $50,000.00 |

In February 2013, shortly after construction began, Debtor unilaterally changed the original plans without the consent or knowledge of Mr. Jadallah or Mr. Desmond. Most significantly, Debtor altered the plans from a two-car garage to a three-car garage based on the belief that it would increase the Property value substantially. Due to the changes, Debtor started immediately going over budget and falling behind in payments to the subcontractors. Debtor did not tell Mr. Jadallah or Mr. Desmond about these changed circumstances at that time.

On June 19, 2013, Mr. Desmond first learned from Debtor that the Project was over budget and could not be completed without additional funding. On that same day, by e-mail,

-4-

Mr. Desmond informed Mr. Jadallah that the Project was over budget by $200,000.00, and needed additional funding of $100,000.00. As a result of these issues, in late June 2013, Debtor and Mr. Jadallah agreed to meet at the Project, along with their respective attorneys and Mr. Desmond, to perform a walkthrough (the "June 2013 Meeting"). At the June 2013 Meeting, after looking at the state of the Project, Mr. Jadallah agreed to fund the additional $100,000.00 based on Debtor's representations that all subcontractors had been paid and the funds would be sufficient to complete the rest of the work. Shortly thereafter, Debtor ran out of funds and walked off the Project, never completing the promised work.

Although he represented otherwise, beginning in March 2013, Debtor failed to pay various subcontractors for the work performed on the Project. According to the record, Debtor failed to pay (a) Seosamh O'Briain ("Mr. O'Briain") for excavation work on various invoices submitted from February 2013 through June of 2013,[5] (b) Stephen O'Kane ("Mr. O'Kane") for framing work on an invoice submitted in April 2013, and (c) Golden State Lumber for unpaid lumber. As a result of the failure to pay the subcontractors, each recorded mechanics' liens against the Property. At some point in 2015, Mr. Jadallah started foreclosure proceedings on the Property, but such were enjoined by the state court due to the recorded liens.

---

[5] Mr. O'Briain submitted invoices on January 30, 2013, February 13, 2013, February 27, 2013, March 5, 2013, April 3, 2013, and June 5, 2013. Debtor did pay the January 30, 2013 and the February 27, 2013 invoice.

Mr. Jadallah worked out a deal with the subcontractors to release their liens and eventually foreclosed in July 2015.

**C. Bankruptcy proceedings**

On May 11, 2014, Debtor filed a chapter 7 petition. On August 15, 2014, Mr. Jadallah filed a timely adversary complaint seeking to except from discharge, under §§ 523(a)(2), (4) and (6), the First Loan and the Second Loan in the total amount of $1,300,000.00. The basic theory of the complaint was that Debtor personally made fraudulent representations that induced Mr. Jadallah to make both loans to the Redland Group.[6]

On January 13, 2016, the bankruptcy court held a one day trial on the §§ 523(a)(2) and (6) claims only. At the start of trial, Mr. Jadallah withdrew his claims for nondischargeability of the First Loan, thereby only prosecuting whether the Second Loan, in the amount of $700,000.00, was exempt from discharge. Debtor, Mr. Jadallah, Mr. Desmond, and Nelson Cheung, the contractor that took over the Project after foreclosure, all testified. On April 13, 2016, the bankruptcy court issued a memorandum decision finding that $500,000.00 of the Second Loan was nondischargeable under § 523(a)(2)(A). In accordance with its memorandum opinion, the court entered a judgment in favor of Mr. Jadallah on April 18, 2016.

In its decision, the court determined that $500,000.00 of the total $700,000.00 was exempt from discharge based on two separate claims.

---

[6] Debtor has not challenged on appeal that as the principal of Redland Group he could be personally liable for fraudulent representations made during the lending transaction.

-6-

The first claim was based on the nondisclosure of material facts (the "Nondisclosure Claim"). The court held that Debtor had a duty to disclose certain material facts that were known exclusively to him but suppressed. Based on the testimony, the court found that: (1) Mr. Jadallah and Mr. Desmond did not learn of the changes to the Project until June 19, 2013, finding Debtor's testimony to the contrary not credible; and (2) Debtor alone knew that (a) certain subcontractors and suppliers were not paid, (b) the Project could not be completed on budget, and (c) major changes were made to the Project, including changing the plans from a two-car garage to a three-car garage. After finding that he had a duty to disclose, the court concluded that Debtor asked for the March 7th, May 7th, and May 28th advances even though he knew that the Project could not have been completed for $700,000.00 and he still owed subcontractors payments from the plan changes, which were material facts that he did not disclose. The court then inferred Debtor's intent to deceive because he knew that if he disclosed these facts earlier, Mr. Jadallah would not have made any further advances toward completion of the Project.

Under this claim, the court held that the March 7th, May 7th, and May 28th advances were nondischargeable. The court did not include the January 23rd and January 29th advances because there was no evidence that Debtor knew of the major changes and default in January 2013. Likewise, the court did not include the two August 9th advances because on June 19, 2013, Mr. Jadallah had become aware of the plan changes and that additional funding was needed.

The second claim was based on an affirmative misrepresentation (the "Misrepresentation Claim"). Although Debtor testified to the contrary (which the court found not credible), the court determined that at the June 2013 meeting Debtor represented that (1) parts for the Project had been ordered, (2) contractors had been paid, and (3) the remaining $100,000.00 would be sufficient to complete work on the Project. The court found that Debtor knew these representations were false when made because there were unpaid subcontractors and the remaining two advances would not be sufficient to complete the Project. From these facts the court inferred an intent to defraud, as there was no other explanation why Debtor would make such representations except to induce Mr. Jadallah to advance the last $100,000.00.

On April 27, 2016, Debtor filed a timely notice of appeal of the bankruptcy court's judgment. On April 30, 2016, Debtor filed a reconsideration motion and a request for judicial notice in support thereof, seeking reconsideration of the memorandum decision (the "Reconsideration Motion"). In large part, the Reconsideration Motion requested that the court consider new evidence of a post-trial sale of the Property by Mr. Jadallah, after he had foreclosed and completed the renovation, and a new damage theory, the "special benefits" doctrine, which would mitigate damages.

On June 2, 2016, the bankruptcy court held a hearing on the Reconsideration Motion. The court required supplemental briefing on various issues that were not raised at trial, including the post-trial sale and the "special benefits"

-8-

doctrine. After further briefing, on August 8, 2016, the court entered an order denying the Reconsideration Motion. In doing so, the court denied admission of any new evidence regarding the post-trial sale of the Property and denied consideration of the "special benefits" doctrine as an unraised affirmative defense. The court stated that Debtor waived this argument by not raising it at trial. Debtor did not introduce any evidence to support such a theory at trial, and if the court did consider the theory, it would not have resulted in a dollar for dollar mitigation as Debtor argued in his motion.

Debtor did not file a notice of appeal or amended notice including the Reconsideration Motion.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE[7]

---

[7] This memorandum does not address issues raised in the complaint pertaining to the alter ego theory and the causes of action under §§ 523(a)(4) and 523(a)(6), or Debtor's Reconsideration Motion for which no notice of appeal was filed. First, as to the § 523(a)(4) claim, prior to trial, on October 22, 2014, the bankruptcy court granted, in part, Debtor's motion for judgment on the pleadings which dismissed the cause of action alleged under § 523(a)(4). Second, as to the alter ego theory and the §523(a)(6) claim, Debtor does not include these issues in his statement of issues on appeal or provide any argument in his opening brief; therefore, these issues have been waived. See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001) (asserting that issues not specifically and distinctly argued in opening brief are waived). Last, as to the Reconsideration Motion, although Debtor timely appealed the bankruptcy court's judgment, he did not file a new notice of
(continued...)

-9-

Whether the bankruptcy court erred in holding that part of the Second Loan was nondischargeable under § 523(a)(2)(A).

## IV. STANDARDS OF REVIEW

Questions of law are subject to de novo review. United States v. Lang, 149 F.3d 1044, 1046 (9th Cir. 1998). Questions of fact are reviewed under the clearly erroneous standard. Pullman-Standard v. Swint, 456 U.S. 273, 287 (1982). A finding of fact is clearly erroneous when, after reviewing the evidence, we are left with the definite and firm conviction that a mistake has been committed. In re Contractors Equip. Supply Co., 861 F.2d 241, 243 (9th Cir. 1988).

We review a bankruptcy court's findings of fact, whether based on oral or documentary evidence, under the clearly erroneous standard. Rule 8013; Wells Fargo Bank v. Beltran (In re Beltran), 182 B.R. 820, 823 (9th Cir. BAP 1995). We give due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses. In re Beltran, 182 B.R. at 823. A bankruptcy court's finding as to a debtor's intent is a question of fact. We do not substitute our judgment for that of the bankruptcy court in reviewing findings of fact. Smith v. James Irvine Found., 402 F.2d 772, 774 (9th Cir. 1968). If two

---

[7](...continued) appeal or amend his prior notice to include the denial of the Reconsideration Motion. Since the order on the Reconsideration Motion does not in any way amend or alter the findings of fact in the court's memorandum decision, this Panel is not bound to review the Reconsideration Motion in the instant appeal. See Moldo v. Ash (In re Thomas), 428 F.3d 1266 (9th Cir. 2005); see also 10 Collier on Bankruptcy ¶ 8002.08 (15th ed., rev. 2005).

views of the evidence are possible, the trial judge's choice between them cannot be clearly erroneous. <u>Hansen v. Moore (In re Hansen)</u>, 368 B.R. 868, 874-75 (9th Cir. BAP 2007). We give findings of fact based on credibility particular deference. <u>Id.</u>

## V. DISCUSSION

### A. Motion to Strike

During the pendency of this appeal, Mr. Jadallah filed a motion to dismiss or, in the alternative, to strike document numbers 6 and 11 in the record on appeal on the grounds that the documents were not part of the record before the bankruptcy court at trial. On November 7, 2016, a motions panel entered an order that denied the motion to dismiss, granted the motion to strike only as to document number 6,[8] and deferred to this panel the determination of whether to strike document number 11.

As an initial matter, the number of the document which Mr. Jadallah sought to strike is incorrect. Mr. Jadallah wished to strike the "Declaration of [Debtor] in Support of Revised Motion for Judgment on the Pleadings Combined with Motion

---

[8] Document number 6 in Debtor's Excerpts of Record is a Request for Judicial Notice of facts pertaining to the post trial sale of the Property by Mr. Jadallah. Debtor had submitted a similar request to the bankruptcy court in his Reconsideration Motion and the court sustained an objection to the request on the grounds that the source of the facts was not a "generally known" source whose accuracy cannot be questioned. Our motions panel granted the motion to strike the request because the pertinent facts occurred after the trial concluded and therefore the information could not have been part of the record which formed the basis of the bankruptcy court's ruling. We find no error in the motion panel's reasoning and therefore leave its ruling undisturbed.

-11-

Summary Judgment."  Per Debtor's Excerpts of Record, the challenged declaration is document 12, not 11.  We find that the declaration should be stricken.  The declaration was not admitted into the trial record and it would be improper for this Panel to consider any material outside that record.  See Heath v. Helmick, 173 F.2d 156 (9th Cir. 1949).

**B. Elements of § 523(a)(2)(A)**

Section 523(a)(2)(A), in relevant part, excepts from discharge any debt for money, property, or services to the extent obtained by false pretenses, a false representation, or actual fraud.  § 523(a)(2)(A).  In order to establish that a debt is nondischargeable under § 523(a)(2)(A), a creditor must establish five elements by a preponderance of the evidence:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000); Ghomeshi v. Sabban (In re Sabban), 384 B.R. 1, 5 (9th Cir. BAP 2008).

Since direct evidence of an intent to deceive is rarely available, a debtor's knowledge and intent to deceive may be inferred from the totality of the circumstances.  Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch), 237 B.R. 160, 167-68 (9th Cir. BAP 1999); Alexander & Alexander of Wash., Inc. v. Hultquist (In re Hultquist), 101 B.R. 180, 183 (9th Cir. BAP 1989).

Whether reliance is justified depends upon the "qualities

-12-

and characteristics of a particular plaintiff, and the circumstances of the particular case, rather than the application of a community standard of conduct to all cases." <u>Field v. Mans</u>, 516 U.S. 59, 71 (1995).

**C. Nondisclosure under § 523(a)(2)(A)**

For purposes of § 523(a)(2)(A), an omission may give rise to fraud liability only when there is a duty to disclose. <u>Apte v. Japra M.D., F.A.C.C., Inc. (In re Apte)</u>, 96 F.3d 1319, 1324 (9th Cir. 1996); <u>Citibank, N.A. v. Eashai (In re Eashai)</u>, 87 F.3d 1082, 1089 (9th Cir. 1996).

We look to the common law concept of fraud found in the Restatement for guidance in determining what constitutes a fraudulent nondisclosure for purposes of § 523(a)(2)(A). <u>See Field v. Mans</u>, 516 U.S. at 68-70; <u>In re Apte</u>, 96 F.3d at 1324; <u>Tallant v. Kaufman (In re Tallant)</u>, 218 B.R. 58, 64-65 (9th Cir. BAP 1998).

Section 551 of the Restatement (Second) of Torts provides in relevant part:

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

. . .

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading,

-13-

. . .

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551 (1976).  Moreover, in the context of a contractual relationship, the Restatement (Second) of Contracts may also be instructive.  See Barnes v. Belice (In re Belice), 461 B.R. 564, 580 (9th Cir. BAP 2011).  The Restatement (Second) of Contracts provides in relevant part:

A person's non-disclosure of a fact known to him is equivalent to an assertion that the fact does not exist in the following cases only:

. . .

(b) where he knows that disclosure of the fact would correct a mistake of the other party as to a basic assumption on which that party is making the contract and if non-disclosure of the fact amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.

Restatement (Second) of Contracts § 161 (1981).  Therefore, stated simply, a duty arises when the defendant actively conceals a material fact from the plaintiff or makes partial representations to suppress some material facts.

A concealed fact is material if "a reasonable man would attach importance to the alleged omissions in determining his course of action."  Loomas v. Evans (In re Evans), 181 B.R. 508, 515 (Bankr. S.D. Cal. 1995).

**D. Application of § 523(a)(2)(A)**

We have reviewed the bankruptcy court's findings of fact in its memorandum opinion and conclude that, under both of the

-14-

court's findings, it committed no clear error in finding fraud under § 523(a)(2)(A). We address each claim in turn.

**1. The Nondisclosure Claim**

After trial, the bankruptcy court made factual findings that Debtor committed actionable fraud under § 523(a)(2)(A) by failing to disclose material facts known exclusively to him after the June 2013 Meeting. We can only disturb these findings if they were clearly erroneous. See Joseph F. Sanson Inv. Co. v. 268 Ltd.(In re 268 Ltd.), 789 F.2d 674 (9th Cir. 1986).

(a) Nondisclosure

The bankruptcy court determined that an omission is actionable under § 523(a)(2)(A) when there is a duty to disclose. The court found that Debtor was under a duty to disclose because he alone knew about material facts which were unknown to Mr. Jadallah or Mr. Desmond until the June 2013 Meeting: various subcontractors and suppliers had not been paid; major plan changes were unilaterally made to the Project by Debtor; and the Project would not be completed on budget. Debtor was under an obligation to disclose such to Mr. Jadallah or Mr. Desmond prior to requesting the March 7th, May 7th, and May 28th advances.

The bankruptcy court did not commit clear error in finding that Debtor alone knew of the above facts prior to the June 2013 Meeting. Mr. Jadallah and Mr. Desmond both testified that they were not made aware of the facts before the June 2013 Meeting. Mr. Jadallah testified that if he had been made aware, he would not have made the May advances. The court did not find Debtor's contrary testimony credible. In the end, the court simply gave

-15-

more weight to the trial testimony of Mr. Jadallah and Mr. Desmond. Because Debtor did not submit any evidence other than his testimony to support his version of the facts, the court did not commit clear error in concluding that he alone possessed knowledge of the omitted facts.

(b) Knowledge of omitted facts

The court found that when requesting the March and May advances, Debtor had knowledge of the facts he failed to disclose. Based on Debtor's trial testimony, by March 3, 2013, Debtor knew that he could not complete the Project within budget and had only paid subcontractor Mr. O'Briain according to the original plans, owing a balance for work done pursuant to the modified plans. Based on this testimony, the court concluded that Debtor knew of the omitted facts when requesting the March 7th, May 7th, and May 28th advances. We see no clear error.

(c) Intent to deceive

The court recognized that it was not enough that Debtor failed to disclose the omitted facts, but he must have done so with an intent to deceive. The court inferred that intent from the surrounding circumstances, particularly because Debtor did not come forward with the omitted facts based on a fear that Mr. Jadallah would not make any more advances. The court's inference is sound. Mr. Jadallah testified that he would not have made the March and May advances had he known of the true facts. Therefore, we see no error in the court's inference.

(d) Justifiable reliance

The bankruptcy court found Mr. Jadallah's reliance

justifiable. The court stated that Mr. Jadallah and Mr. Desmond did not know of the true facts when making the March and May advances, and the representations made by Debtor were not contrary to common sense. Therefore, the court concluded that Mr. Jadallah's reliance was justifiable when making the advances. We will not disturb this finding.

### (e) Damages

The court found that $300,000.00 was nondischargeable for the nondisclosure. Included in this amount were the March 7th, May 7th, and May 28th advances, but not included were the January and August advances. It excluded the January 23rd and January 29th payments because there was no evidence that Debtor knew of the major changes and default in January 2013. It excluded the two August 9th advances because on June 19, 2013, Mr. Jadallah had become aware of the plan changes and that additional funding was needed. The court's finding of the resulting damages due to nondisclosure is not error.

**a. Debtor's Arguments Against Nondisclosure Claim**

Most of Debtor's argument centers around whether Mr. Jadallah recouped his losses because of a post-trial sale of the Property. Debtor raised this same argument in the Reconsideration Motion. In essence, Debtor asserts that under the "special benefit" doctrine,[9] the bankruptcy court was

---

[9] The "special benefit" doctrine is a long-standing principle of tort damages recognized under California law. See Turpin v. Sortini, 31 Cal. 3d 220 (1982). In essence, the "doctrine reflects the basic compensatory theory underlying tort damages by restricting recovery to the harm actually incurred."
(continued...)

-17-

obligated to mitigate damages, concluding that Mr. Jadallah did not suffer any damages after accounting for the post-trial sale.

The first time Debtor raised the "special benefit" doctrine or the post-trial sale of the Property was in his Reconsideration Motion. Like most mitigation theories, the "special benefit" doctrine must be both pled and proved prior to trial. See Am. Jur. 2d, Damages § 30:24. Debtor did neither. No argument, evidence, or exhibits in support of these new facts were part of the bankruptcy court's record. The law in the Ninth Circuit prevents an appellate court from considering evidence outside the trial record on direct appeal. Smyrnos v. Padilla (In re Padilla), 213 B.R. 349, 354 n.3 (9th Cir. BAP 1997); see also Kirshner v. Uniden Corp. of Am., 842 F.2d 1074, 1077 (9th Cir. 1988). Therefore, because there is no trial record pertaining to these new facts, this Panel will not consider these arguments in the disposition of this appeal.

Debtor does not submit any argument challenging the nondisclosure law or factual findings of the bankruptcy court's holding under the Nondisclosure Claim. Rather, Debtor argues that because the Second Loan was based on a valid contract, it is removed from § 523(a)(2)(A) unless it is shown that Debtor made misrepresentations at the time of contracting.

We disagree. The bankruptcy court found that because Debtor was required to, but did not, disclose various material facts, Mr. Jadallah satisfied his burden of establishing the

---

[9](...continued)
Heckert v. MacDonald, 208 Cal. App. 3d 832, 839 (1989).

-18-

nondischargeable liability under § 523(a)(2)(A). Mr. Jadallah did not plead or attempt to prove a fraud in the inducement theory of nondischargeability. Thus, Debtor's contract argument is wayward.

**2. The Misrepresentation Claim**

The bankruptcy court also found that Debtor committed actionable fraud under § 523(a)(2)(A) by making several affirmative misrepresentations at the June 2013 Meeting.

(a) Misrepresentation

The bankruptcy court found that Debtor made the following affirmative misrepresentations at the June 2013 Meeting: all the parts for construction had been ordered; all contractors had been paid; and the remaining $100,000.00 would be sufficient to complete work on the Project. The court found Debtor's contrary testimony not credible. Rather, the court gave weight to the testimony of Mr. Jadallah and Mr. Desmond that the representations were made at the June 2013 Meeting. The bankruptcy court properly weighed the credibility of the witnesses, which we cannot disturb. See Rule 8013.

(b) Knowledge of falsity

The court found that Debtor knew that the representations made at the June 2013 Meeting were false because at the time of the meeting there were unpaid subcontractors and the remaining advances would not be sufficient for completion. The court's findings are supported by the trial record. The testimony of the subcontractors alone establish that they were unpaid at the time of the June 2013 Meeting. This testimony, coupled with the fact that Debtor was in charge of paying the subcontractors,

-19-

establishes that the bankruptcy court's factual finding is well supported by the trial record.

### (c) Intent to deceive

The court found that there was an intent to deceive Mr. Jadallah because there would be no other explanation for making the representations other than to induce Mr. Jadallah to advance the funds. We find no clear error in this finding.

### (d) Justifiable reliance

The court used the same finding to establish justifiable reliance in both findings of fraud. We have already shown that there was no clear error in the court's prior finding, so we need not address the issue again.

### (e) Damages

The court found that $100,000.00 was nondischargeable for the two August advances. The court found that at the June 2013 Meeting, Mr. Jadallah was led to believe that the Project would be completed with $100,000.00 and all subcontractors were paid; he therefore made the last two August advances based on these representations. The evidence supports this finding.

**a. Debtor's Arguments Against the Misrepresentation Claim**

Debtor argues that the testimony does not support the bankruptcy court's finding that the last two August draws are nondischargeable based on the affirmative misrepresentations.[10]

---

[10] Debtor erroneously asserts that our review of the factual findings is de novo, citing cases which acknowledge a mixed question of review in nondischargeability cases. However, Debtor only challenges the factual findings on misrepresentation that are given clearly erroneous deference under the mixed question of

(continued...)

Debtor first heavily relies on an e-mail sent on June 20, 2013,[11] that made Mr. Jadallah aware that $100,000.00 would not be enough to finish the Project. The bankruptcy court found this e-mail came before the June 2013 Meeting. The court found that at the June 2013 Meeting Debtor made different representations: that all the contractors had been paid and that the remaining $100,000.00 would be sufficient to complete work on the Project. The court believed the testimony of Mr. Jadallah and Mr. Desmond that those representations were made at the June 2013 Meeting and found Debtor's counter assertions not credible. We defer to the trial court on that finding.

Second Debtor asserts that by looking at the Property Mr. Jadallah had to know that $100,000.00 would not be enough to finish the Project. The trial testimony and the bankruptcy court's findings establish that Mr. Jadallah was not an experienced contractor, nor was he in charge of construction of the Property. Mr. Jadallah was merely a passive investor and, as such, nothing about the state of the Project would have been inherently obvious to Mr. Jadallah. Supported by the record and the court's assessment of credibility, the bankruptcy court's findings are not clearly erroneous on this point.

Debtor last argues that his statement asserting that

---

[10](...continued)
law review.

[11] The e-mail was sent from Mr. Desmond to Mr. Jadallah. In the e-mail, Mr. Desmond quoted Debtor stating that the Project would need additional funding above the $100,000.00 to be completed.

$100,000.00 would be sufficient to complete the work on the Project is excluded from review under § 523(a)(2)(A) as a "representation of Debtor's financial condition."

This argument is nonsensical. While it is true that, pursuant to § 523(a)(2)(A), an oral "statement respecting the debtor's financial condition" is expressly excluded from this exception to discharge, Debtor's misrepresentation does not pertain to the "financial condition" contemplated under § 523(a)(2)(A). Statements regarding a debtor's financial condition "are those that purport to present a picture of the debtor's overall financial health." Cadwell v. Joelson (In re Joelson), 427 F.3d 700, 714 (10th Cir. 2005); see Barnes v. Belice (In re Belice), 461 B.R. 564, 578 (9th Cir. BAP 2011). Such a statement would be "analogous to balance sheets, income statements, statements of changes in overall financial position, or income and debt statements that present the debtor or insider's net worth, overall financial health, or equation of assets and liabilities." Id. Here, the statement made was pertaining to Project, not Debtor. Debtor made a representation about how much he believed it would cost to finish the Project, which Mr. Jadallah relied on in making his last two funding draws. This representation is not a statement respecting the debtor's financial condition as contemplated by the statute and relevant case law. Therefore, this argument fails.

## VI. CONCLUSION

The bankruptcy court made proper factual findings on all of the elements of fraud, both nondisclosure and affirmative misrepresentations. Therefore, we AFFIRM.